## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TERESA CLARK, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00302 |
| | ) |
| CHARLES TOWERS, LLC, a for-profit | ) |
| Company, SOUTHERN MANAGEMENT | ) |
| CORPORATION, a for-profit corporation, | ) |
| CANDY WONGSAM, an individual, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THEIR
## Rule 12(b)(2) MOTION TO DISMISS

NOW COME, the Defendants, CHARLES TOWERS, LLC, SOUTHERN MANAGEMENT CORPORATION, and CANDY WONGSAM, by and through their attorneys, ESP KREUZER CORES LLP, and for their Reply to Plaintiff's Response to their Motion to Dismiss pursuant to Rule 12(b)(2), so state as follows:

It is Plaintiff's position that these Defendants have had more contact with the State of Illinois that just with her. Her only evidence to support that is some blog or other information she has presumably copied from the internet. The fact that a person or business has postings on the internet does not satisfy the minimum contacts test. If it did, then all businesses who have a website would be subject to personal jurisdiction in every state. Furthermore, if one were to look closely at the literature Plaintiff attached, it is clear that the property it has is in Maryland where Plaintiff had her apartment.

1

Plaintiff discusses the case *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 479-80, 105 S.Ct. 2174 (1985), for the principle that jurisdiction has been found over defendants who "purposefully 'reached out beyond' their State and into another, by for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State, or by circulating magazines to 'deliberately exploit' a market in the forum State." *See Keaton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S.Ct. 1473 (1984). In *Burger King,* the facts are such that the Court found that Florida had personal jurisdiction over a franchisee in Michigan. The Court, however, found that since the franchisee "established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair," they found that Florida did have jurisdiction over the franchisee in Michigan. *Id., Burger King, 465 U.S. at 487.* Similarly, the *Keaton* Court involved a libel action. The Court found that the regular and ongoing circulation of magazines in a given state with libelous content was directed to the residents of that given state whereby the given state would have personal jurisdiction over the publisher.

Such is not the case here. The facts here are quite different. First, Plaintiff is an Illinois resident who was moving to Maryland to take a new job. She went on the internet to find an apartment and found the Charles Towers Apartments. While a lease may have been emailed to her for execution, there is nothing to suggest in that transaction that these Defendants might believe they would be subject to litigation in Illinois. The number of emails between these parties does not "increase" the minimum contacts that Defendants may or may not have with Illinois. Second, the General Lease Terms at paragraph 3 suggest that Plaintiff agreed that Maryland would be the

jurisdiction in which conflicts would be resolved should they arise between these parties (Exhibit A). Based on the contract terms, Plaintiff should have expected that any litigation regarding her tenancy would be in Maryland. Further, Plaintiff is claiming that Illinois law, specifically the Illinois Fair Housing Act, was violated because of housing that she had in Maryland. While this motion is not challenging the substance of the Amended Complaint at this time, clearly Plaintiff is raising issues about events that occurred in Maryland.

Plaintiff also cites the case *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115 (2014), which found that minimal contacts as to the transaction in question had not been established. The *Walden* Court went on to hold:

> "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. See *Burger King, supra,* at 478, 105 S.Ct. 2174 ('If the question is whether an individual's contract with an out of state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot'); ***But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id., 571 U.S. at 285-86.*

Just because Southern Management is one of the "Country's Largest Apartment Firms" does not mean that it conducts any business in Illinois sufficient to confer personal jurisdiction. In fact, the article admits these are statistics based on voluntarily submitted information to a real estate research firm. Plaintiff has cited no other contact to Illinois by these Defendants other than the email correspondence between her and Defendants. Finally, not one of the allegations of wrongdoing occurred in the State of Illinois, but rather in Maryland as so evidenced by Plaintiff's Amended Complaint and attachments. *See, Heil v. Morrison Knudsen Corporation,* 863 F.2d 546 (7th Cir. 1988). There is simply no evidence that these Defendants have minimum contacts to the State of Illinois to confer personal jurisdiction.

WHEREFORE, the Defendants, CHARLES TOWERS, LLC, SOUTHERN MANAGEMENT CORPORATION, and CANDY WONGSAM, pray this Honorable Court for an order granting their Motion to Dismiss and for such further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED,

Attorney for Defendants

Laura M. Maul, Esq.
ESP KREUZER CORES LLP
400 S. County Farm Road, Suite 200
Wheaton, IL 60187
(630) 871-1002
(630) 871-0224 (fax)
lmaul@ekclawfirm.com
Attorney No. 6207066

4

☒New Lease ☐Transfer ☐Renewal ☐Change in lesseholder(s)

## SOUTHERN MANAGEMENT CORPORATION
## RESIDENTIAL LEASE



Fundamental Lease Provisions. This Lease Agreement, entered into on this 27TH day of March, 2015, in consideration for the covenants set forth hereinafter between Landlord ("Lessor") and Tenant ("Lessee(s)"), hereby reads as follows:

A. LESSOR: Charles Towers

c/o SOUTHERN MANAGEMENT CORP.

1110 Fidler Lane, Suite Lobby B

Silver Spring, MD 20910

B. LESSEE(S): Teresa Clark

**APR 29 2015**

C. ADDRESS OF LEASED PREMISES ("PREMISES"): 8 Charles Plaza 0802 Baltimore MD 21201

D. OCCUPANTS: (Apartment occupancy is strictly limited to the following individuals).

| Name | Date of Birth | Social Security No. | Telephone (Work) |
|---|---|---|---|
| Teresa Clark | 02/23/1977 | XXX-XX-4661 | (410) 966-5071 |

E. LEASE TERM: 12 month(s); then month-to-month thereafter.

F. LEASE COMMENCEMENT DATE: 04/01/2015; POSSESSION DATE: 03/27/2015; EXPIRATION DATE: 03/31/2016

G. BASE RENT (due on or before the first day of each month): Total Rent $15,060.00 Monthly Rent     $1,255.00

H. PRO-RATED RENT: Month due: March     No. of Days 5 in March (Month); Amount     $202.42

I. SECURITY DEPOSIT: $100.00     DATE RECEIVED: *3-27-15*

J. UTILITY CHARGES INCLUDED UNDER LEASE: *Water and elect*

K. TERMINATION OF LEASE:     Lessee acknowledges that although this Lease is for a definite term, Lessee must provide Lessor with written notice at least (30) days prior to the Expiration Date as set forth hereinabove; otherwise, the Lease automatically continues on a month-to-month basis. Thereafter, in order for the Lessee to terminate this Lease, Lessee must give Lessor written notice not less than thirty (30) days prior to the date it intends to quit and vacate provided said notice is given and received by Lessor prior to the first day of the month, to be effective the last day of the month following such notice.

L. LESSEE has received copies of: 1) Written receipt for Security Deposit 2) Lease Application, and 3) Lease.

M. INTEREST:     LESSEE agrees to pay Lessor interest at the rate of ten percent (10%) per annum of all rent and other lease charges unpaid and remaining due under the Lease from the date Lessee vacates the premises until paid in full.

N. JOINT AND SEVERAL LIABILITY:     All Lessees and Occupants of the premises and Guarantors shall be jointly and severally liable for all acts and all sums due and owing under the Lease and for the terms and conditions of this Lease and any extension or holdover periods hereunder.

LESSOR OR AUTHORIZED AGENT:

LESSEE(S):

_____ *3-27-15* (SEAL)
Teresa Clark     Date

By: _____ *3-27-15*
     Date

_____ (SEAL)
     Date

Print Name and Title: Candace Wongsam, Property Manager

_____ (SEAL)
     Date

_____ (SEAL)
     Date

_____ (SEAL)
     Date

_____ (SEAL)
     Date

The GUARANTOR personally guarantees payment of all charges and sums due and owing under this Lease and all extensions and holdover periods and specially acknowledges receipt of the following at time of execution of this Lease agreement: 1) Copy of Residential Lease; 2) Copy of Guarantor's application.

Name: _____     Social Security No. _____     Signature: _____

Address: _____

Telephone: ( )    -

Name: _____     Social Security No. _____     Signature: _____

Address: _____

Telephone: ( )    -

Lease Attachments:     X   General Lease Terms: X   Addendum A: X   Addendum B (Policies)

Other Item(s):



ALL-STATE LEGAL®   **A**

## General Lease Terms

**Lessor's Responsibilities; Lessee's Duties**

1. Lessor will comply with all appropriate provisions of federal, state, county, or local statute, code or regulation governing maintenance, construction, use or appearance of the leased premises and the property of which it is a part. Lessee shall (1) comply with all Addenda hereto and the rules, regulations, policies, and guidelines imposed hereunder; (2) prohibit any person on the leased premises or apartment community, with or without Lessee's permission, from willfully, wantonly, or negligently destroying, defacing, damaging, impairing, or removing any part of the structure or dwelling unit or the facilities, equipment, or appurtenances or engaging in unlawful conduct and (3) refrain from interfering with the rights of other leaseholders or occupants to peaceably enjoy, use, or occupy the premises and apartment community and shall give Lessor prompt written notice of any accident, dangerous conditions, or defacing occurring on the leased premises or the apartment community.

**Condition of Premises; License**

2. Lessor has examined the leased premises and covenants that the leased premises and all common areas of which the leased premises are a part are in clean, habitable, and sanitary condition, free of rodents and vermin, and are in compliance with all applicable laws. Lessee hereby acknowledges that execution of this Lease Agreement is conclusive evidence that Lessee accepts delivery of the leased premises and that the leased premises and all common areas are in clean, habitable and sanitary condition, free of rodents and vermin, and are in compliance with all applicable laws. Lessor is duly licensed to operate a multi-family residential dwelling and such license may be inspected by Lessee during normal business hours at the offices of Lessor as hereinbefore stated in this Lease Agreement or at such other place as Lessor may hereafter designate.

**Lease Application; Credit Disclosures; Venue; Limitations**

3. Lessor tenders and Lessee accepts this Lease Agreement based on the representations contained in the Lease Application submitted by Lessee and made a part of this Lease Agreement, for the purpose of inducing Lessor to execute this Lease Agreement. In the event that any of the representations contained in the Lease Application shall be found to be misleading, incorrect or untrue, said shall be a substantial breach that warrants eviction permitting Lessor to forthwith avoid the tenancy or terminate this Lease Agreement and repossess the leased premises, reserving all rights and remedies against Lessee as if a default hereunder had occurred.

In consideration of the application and this Lease Agreement, Lessee and Guarantor, if any, authorize Lessor to obtain investigative consumer reports on Lessee and Guarantor during the application process and for so long as the tenancy continues and Lessor claims sums are due and owing under the Lease Agreement and as a result of the tenancy between the parties. Such reports may contain, but may not be limited to, consumer credit reports, criminal history records/court records investigations, verification of residences, employment and income. Lessor is authorized to verify any and all information contained in the Lease Application and to inquire into issues of Lessee's and Guarantor's character, general reputation, personal characteristics, and mode of living. All concerned in this process are released from any liability in connection with any information obtained. Lessee and Guarantor have the right under the Federal Fair Credit Reporting Act ("FCRA") Section 606(b), to make a written request to Lessor and those entities that provide information during this process, within a reasonable time, for a complete and accurate disclosure of the nature and scope of any such investigation. Lessee and Guarantor, if any, agree, certify, and acknowledge that the information provided in the Lease Application and the request for and use of any such reports are for the permissible business purposes of investigating the Lessee and/or Guarantor, Lessee and/or Guarantor's creditworthiness, obtaining information as to Lessee and/or Guarantor as to the collectability of sums due and owing under this Lease Agreement and tenancy, and for any other permissible business purpose as set forth by law or under this Lease Agreement. Lessee, Guarantor, and Lessor further agree that any information so obtained may be used in pursuit of the collection of any debt claim arising out of this Lease Agreement, the Lease Application, or in case of an emergency.

In consideration of this Lease Agreement, upon expiration or termination of this Lease Agreement, Lessee and/or Guarantor agree to promptly pay all sums that remain unpaid hereunder for rent, damages beyond reasonable wear and tear, and other charges that have accrued or have arisen under this Lease Agreement in a prompt manner, but in no event, later than thirty (30) days from Lessor's mailing of an itemized list of claims to Lessee's last known address. If no objection to said charges are made in writing within this time, the entire debt shall be assumed valid. In the event of nonpayment of said charges, Lessee and Guarantor acknowledge and authorize Lessor to report any unpaid claim to credit reporting agencies. In the event Lessor files legal action for any such claims and the leased premises is located in the State of Maryland, Lessee and Guarantor waive any legal rights related to jurisdiction and venue and the parties consent that, at Lessor's option, venue shall lie in the District Courts of Maryland for Montgomery County or Prince George's County.

In consideration of this Lease Agreement, Lessor, Lessee, and Guarantor specifically intend and agree that for leased premises located in the State of Maryland, this Lease Agreement constitutes a specialty contract under seal only with respect to any sums claimed to be due and owing or arising out of or under this Lease Agreement by Lessor and said claims shall be subject to a twelve (12) year statute of limitations under Courts & Judicial Proceedings Article, Section 5-102 of the Annotated Code of Maryland or other applicable provisions of state or local law, from the date Lessor obtains possession of the leased premises. It is further agreed that any claims made arising out of or under this Lease Agreement or tenancy by Lessee or Guarantor are not specialties in nature, are not

governed by a twelve (12) year statute of limitations and shall be governed by the regular applicable statute of limitations set forth by applicable law.

**Possession**  4.  The Lessor has not guaranteed a specific delivery date for the leased premises. The Lessee will only be charged rent from the later of the commencement date specified at the beginning of this Lease Agreement or the date Lessor tenders possession of the leased premises to Lessee. If permission is given to Lessee to enter into possession of the leased premises prior to the date specified for the commencement of the term of this Lease Agreement, and/or to occupy any apartment of Lessor other than the leased premise at any time, Lessee covenants and agrees that such occupancy shall be deemed to be under all of the terms, covenants, rules and regulations of this Lease Agreement, with the rent provided for under this Lease Agreement to be apportioned for such period of occupancy (as to space on a square foot basis, and as to time, on a daily basis) unless otherwise agreed to between the parties.

**Rules and Regulations**  5.  The rules and regulations in this Lease Agreement are hereafter published as "Community Policies and Guidelines". The Community Policies and Guidelines, and Addenda to this Lease Agreement, and such other amendments, additions and modifications as are and as may from time to time be made by the Lessor, shall be part of this Lease Agreement. Lessee covenants that said rules and regulations shall be faithfully observed by Lessee, all occupants of the leased premises, and Lessee's agents, family members, guests, and invitees, whether or not known to Lessee,. Violation of any of these items shall be deemed a default and a material violation of the Lease Agreement hereunder.

**Restrictions On Use**  6.  Lessee will not use or allow to be used the leased premises and the property of which it is a part for any disorderly or unlawful purpose, or in any manner offensive to the occupants of other apartments. The leased premises shall be kept in clean, safe, and sanitary condition. The leased premises shall be occupied by no other persons whatsoever; any other proposed occupant must fill out a lease application, be subject to Lessor's qualifying criteria, and approved by Lessor. A new Lessee must sign a lease agreement and be subject to all rules, regulations, policies and guidelines, as set forth therein. Nothing shall be done, nor shall anything be brought into said leased premises or the property of which it is a part, which will increase the rate of fire insurance on the leased premises or any building or property of which it is a part. Neither Lessee, occupants of the leased premises, nor Lessee's agents, family members, guests or invitees, whether or not known to the Lessee, shall use the leased premises, the apartment community, or the surrounding areas for any disorderly, disturbing or unlawful purpose. Lessee, occupants of the leased premises, and Lessee's agents, family members, guests and invitees, whether or not known to the Lessee, shall not engage in any offensive, threatening, abusive or harassing behavior, either verbal or physical, or in any form of intimidation or aggression directed at other residents, occupants, guests, invitees or directed at management, its agents, employees, or vendors.

The leased premises and the apartment community of which it is a part is zoned and permitted for multi-family residential dwellings only. Lessee hereby covenants that the leased premises will not be used for business or commercial activity or purposes, but will be used exclusively for residential purposes only and for such persons as are specifically designated as Occupants herein.

**Subordination**  7.  This Lease Agreement and all of its terms, covenants and provisions are subject and subordinate to any mortgage or Deed of Trust constituting a lien now or hereafter placed upon the property of which the leased premises is a part. Lessee agrees that this Lease Agreement will remain in effect upon any transfer of ownership of the property of which the leased premises is a part. Lessee agrees to recognize the mortgagee or trustee or the purchaser at any sale, including a sale pursuant to the enforcement of any mortgage or Deed of Trust obligation, as Lessor for the balance of the term of this Lease Agreement subject to all terms and provisions hereof. Lessee hereby constitutes and approves Lessor as Lessee's attorney-in-fact to execute any such document or certificate for and on behalf of Lessee. Lessor may assign this Lease Agreement or any of its rights herein at any time.

**Liability and Renters Insurance**  8.  Lessor shall not be liable to Lessee, occupants of the leased premises or Lessee's agents, family members, guests, or invitees, whether or not known to Lessee, for any damage or injury caused to any person or property, or for failure to provide services, caused by water, rain, snow, ice, sleet, fire, storms, other acts of God, acts of nature, acts of war, acts of terrorism, criminal activity or accidents, or by breakage, stoppage, or leakage of water, gas, heating, and sewer pipes or plumbing on or about, or adjacent to the leased premises and Lessee does hereby release and discharge Lessor, its representatives, agents, servants, and employees from liability for failure to provide services and for any injury or damage to the person or property of the Lessee, the occupants of the leased premises, Lessee's agents, family members, guests or invitees, resulting from any cause whatsoever by Lessor, its representatives, agents, and employees excluding negligence or violation of law. Lessor shall have no liability for any damages or injuries caused by second hand or secondary smoke originating from or about the leased premises of other leaseholders, occupants, or their agents, guests, or invitees. Lessor does not carry any insurance on possessions of Lessee or occupants. Lessee shall obtain apartment renters insurance and any claim for damages to property shall be made pursuant to said insurance policy.

**Utilities**  9.  Lessee shall pay utility bills for all items not included in the Monthly Rent for the leased premises when and as the same shall become due and shall make all required deposits with public utility companies. Failure of Lessee to engage and maintain such utilities shall be deemed a substantial breach of lease that warrants eviction and shall not obligate Lessor to provide alternative housing to Lessee in the event the leased premises are deemed uninhabitable as a result thereof. Lessor may at its option convert from master metering to individual metering for each apartment subject to applicable

---

law. Should Lessor become liable for amounts due and owing to a utility provider due to Lessee's failure to pay for or maintain such utilities, such amounts or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties.

**Personal and Property Risk**    10.    All personal property placed in the leased premises, laundry room, storage room, or in any other portion of said building, the apartment community, or any place appurtenant thereto, shall be at the sole risk of Lessee or the parties owning the same, except that Lessor shall be liable for and will reimburse Lessee for any damage to the property of Lessee caused by the negligence or violation of law by Lessor. If any goods, wares or merchandise of Lessee or Lessee's guests shall be placed in the hand or custody of any of the employees or agents of Lessor for safekeeping, or for delivery to said Lessee, or to any person for said Lessee, then such employee shall be deemed the agent of Lessee, and Lessor is hereby expressly released from any and all loss, damage or expense in connection therewith.

**No Waiver**    11.    The failure of the Lessor to insist upon a strict compliance with any of the covenants, rules or regulations of this Lease Agreement, or to exercise any option herein contained, shall not be construed as a waiver of such covenant, rule, regulation or option, but that all covenants, rules, regulations and options shall remain in full force and effect. Lessor shall not be liable or responsible to Lessee for the violation of any covenant, rule or regulation in any other lease by any other tenant. Acceptance of rent or other payment for the use and occupancy of the Premises after issuance of Notice to Quit, the filing of a tenant holding over, breach of lease or wrongful detainer action shall not be construed as an acquiescence of breach or waiver by Lessor to pursue possessory or monetary actions and Lessee consents that Lessor may accept all sums tendered thereafter on account and/or for use and occupancy of the leased premises, with all Lessor's rights reserved.

**Lease Binding on Occupants, Guarantors, Heirs**    12.    This Lease Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of Lessor and the heirs, executors, administrators and to the extent herein permitted, on the assigns of Lessee, but nothing herein contained shall be deemed to require or permit the passing of the leasehold to Lessees' heirs, devises, or personal representatives. All Lessees and occupants of the Premises and Guarantors shall be jointly and severally liable for all acts and all sums due and owing under the Lease Agreement and for the terms and conditions of this Lease Agreement and any extension or holdover periods hereunder.

**Quiet Enjoyment**    13.    Upon Lessee's faithful and full performance of this Lease Agreement, Lessee may peacefully and quietly enjoy the leased premises for the term hereof subject to the terms and conditions of this Lease Agreement.

**No Accord; Allocation of Payments; Prior Debt**    14.    No endorsement or statement on any check, draft, money order, or any letter or other document accompanying any check or payment of rent or other charge hereunder shall be deemed an accord and satisfaction and Lessor may accept such check or payment without prejudice to Lessor's right to recover the balance of such rent or pursue any other charges or remedies in this Lease Agreement. All sums that become due under this Lease Agreement shall be retroactively due and may, at the Lessor's option, be added to the arrearage for the month or months for which said charges accrue. Once Lessee has become liable for sums due and owing under this lease, including but not limited to damages, services provided by Lessor or by a third party and paid for by Lessor, late fees, attorney's fees, or court costs hereunder, all said payments made by Lessee to Lessor shall, at Lessor's option, be applied to those amounts, charges, or sums furthest in arrears, first to attorney's fees, costs, late fees, and damages to property, then to monthly rent. Should an agreement to pay any of said charges be limited by statute, the parties agree to be bound for payment of charges to the fullest extent permissible by law. All such charges or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties. Acceptance of rent or other payments by Lessor after the effective date of any notice or action to terminate tenancy shall not be a waiver of Lessor's right or action in that regard. Placement of payments in an overnight slot, depository, mail slot, or under the door of the management office shall not be deemed as receipt by Lessor. All payments tendered by check, draft or money order shall not be deemed made until good funds are actually physically received in hand by Lessor. Lessor will provide to Lessee a written receipt of all cash paid by Lessee to Lessor for rent, security or otherwise.

Additionally, in the event Lessee owes a prior debt, including but not limited to unpaid rent, utilities, damages to property, and unpaid amounts for other services, as a result of having been a former Lessee at another apartment community or property managed by Southern Management Corporation, at Lessor's option, any sums paid by Lessee to Lessor as a result of this Lease Agreement may first be applied to that prior indebtedness. All such charges or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties.

**Payment of Rent: Action by Lessor Upon Default**    15.    Lessee shall make all rental payments in full, and in advance, on or before the first day of each month ("due date") without a grace period. Where Lessee fails to make all rental payments and payment of other sums due and owing under this lease on or before the due date, Lessor may seek legal possession of the leased premises as early as the second day of the month. Payment or receipt of a payment of less than the amount stated in the lease shall be deemed to be nothing more than partial payment made on the account. Under no circumstances shall Lessor's acceptance of any payment constitute an accord and satisfaction. Nor will Lessor's acceptance of any payment forfeit Lessor's right to collect the balance due on the account, despite any endorsement, stipulation, or other statement on any check, draft or money order. Should Lessee at any time during occupancy of the leased premises fail to timely pay any one of the monthly installments of rent reserved as aforesaid or should Lessee violate any one of the agreements, covenants, terms or conditions of this Lease

Agreement, or any rules, regulations, policies or guidelines promulgated by Lessor under this Lease Agreement or hereafter adopted by Lessor, then in such event Lessor shall have the right to avail itself of all legal remedies including the right to re-enter and take possession of the leased premises by legal process from the court having jurisdiction over the leased premises and without any previous demand or notice, except such notice as may be required by any applicable statute or ordinance. The covenant to pay rent in a timely manner is independent of any and all claims or causes of action Lessee may have against Lessor and, therefore, if Lessor files legal action to collect rent or other charges due under this Lease Agreement, Lessee consents and agrees not to interpose any counter-claim or assert any set-off in said proceedings.

**Legal Proceedings and Attorney's Fees** 16. If Lessee shall violate any covenant, term or condition of this Lease Agreement, including the covenant to pay rent, and the Lessor shall employ an attorney to file suit or to take other action arising out of the lease or occupancy of the leased premises, the Lessee shall be liable to pay all costs thereby incurred by the Lessor, including reasonable attorneys fees, as follows. All such charges or fees shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties:

(1) Reasonable Attorney's fees of $50.00 per case plus costs (except in Virginia wherein the fee shall be the greater of 25% of the monthly rent or $100.00 per case plus costs) for each case filed for non-payment of rent or forcible or unlawful detainer action plus actual attorney's fees incurred for all other possessory actions including actions for tenant holding over, breach of lease or wrongful detainer filed under and subject to Federal, state, county or local law, codes or statutes, plus eviction service charges;

(2) Lessor's actual costs and reasonable attorney's fees of 25% of the indebtedness for recovery of balances due and owing under the Lease Agreement or for occupancy of the leased premises and for damages to the Premises beyond reasonable wear and tear for legal proceedings instituted after Lessee or occupants have quit and/or vacated the leased premises. In such cases, at Lessor's option, the parties consent to jurisdiction and venue in the state courts in which the leased premises were located or the Lessee works or resides, or in the county or city selected by Lessor's managing agent, in its sole discretion;

(3) In the event Lessor employs an Agent to institute proceedings for rent and/or possession of the Premises for non-payment of any installment of rent, or if Lessor, itself, institutes said proceedings and should such rent be due and owing as of the filing of said proceedings, Lessee shall pay to Lessor the reasonable charges of not less than $50.00 plus costs per case, incurred by Lessor in filing said action on its own or by utilizing the services of said Agent, plus eviction service charges.

If Lessee shall make any claim, file suit, or take other action arising out of the lease or occupancy of the leased premises against the Lessor and if the Lessor is awarded judgment or otherwise prevails in the matter, the Lessee shall be liable to pay all costs thereby incurred by the Lessor, including reasonable attorney's fees.

**Bankruptcy; Death of Lessee** 17. In the event Lessee is adjudicated bankrupt or makes an assignment for the benefit of creditors, this Lease Agreement, shall at Lessor's option, cease and determine, and said leased premises shall be surrendered to Lessor, who hereby reserves the right to forthwith repossess the leased premises in accordance with applicable law. Subject to applicable law, filing of bankruptcy proceedings shall in no way relieve the Lessee to pay pre- and post-petition rent and other charges in a timely manner. The parties agree that the term of this Lease Agreement shall cease and determine upon Lessee's death at the option of Lessor and no interest whatsoever shall pass to Lessee's heirs, executors, administrators or assigns by will or intestacy.

**No Drugs; Unlawful Activity; Other Prohibitions** 18. Lessee hereby covenants that neither Lessee nor any occupants, permittees, guests or invitees whether or not known to the Lessee, shall use the leased premises or any part of the apartment community or surrounding areas for any unlawful purpose including but not limited to the unlawful possession, manufacture or distribution of a controlled or dangerous substance, or any apparatus, equipment or paraphernalia related thereto. Use or possession of marijuana in any amount and for any purpose, including for medical purposes, upon the leased premises or any part of the apartment community is strictly prohibited. Possession of guns or weapons or any apparatus related thereto upon the leased premises or any part of the apartment community is strictly prohibited. The parties agree that violation of this paragraph shall be deemed a substantial and material breach of lease that warrants eviction and that Lessor may terminate this Lease Agreement immediately as a result of said breach.

**Damage to Premises; Extermination Services and Third-Party Service Providers** 19. Lessor shall make necessary repairs to the leased premises and the common areas of which the leased premises is a part including but not limited to equipment, fixtures, and appurtenances belonging thereto, whenever such has been damaged by misuse or neglect of the Lessee, occupants of the leased premises, Lessee's agents, family members, guests, or invitees whether or not known to the Lessee. If Lessor makes said repairs, Lessee agrees to pay the cost of same upon presentation of an itemized bill. Such charges may be substantiated upon written request. All such charges or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties. At the termination of this tenancy, Lessee shall return the leased premises including all furniture, fixtures and equipment in the same good order in which they now are, ordinary wear and tear excepted; otherwise, Lessee shall be responsible to reimburse Lessor for sums equal to the amount to return the leased premises to said condition whether said repairs are done in-

house or by an outside contractor, and/or to return or replace the furniture, fixtures, and equipment to said condition. Lessee shall give the Lessor prompt notice of any defects in or to the leased premises including but not limited to water or steam pipes, electric wiring, heating apparatus, pest infestation, suspected mold growth, appliances, or any other part of the leased premises, in order that the same may be repaired with due diligence. Lessee acknowledges that any failure to give prompt notice to Lessor of such a defect or damage shall be considered a substantial and material breach of the lease agreement. In the event extermination services or other services provided by Lessor or a third-party authorized by the Lessor are performed at the leased premises or any part of the apartment community or surrounding areas, Lessee agrees to pay the cost of the same if Lessor reasonably finds in its sole opinion that Lessee, occupants of the leased premises, or Lessee's agents, family members, guests, or invitees whether or not known to the Lessee have either caused the circumstances giving rise to the need for the service or repair or failed or refused to prepare for the service upon advance notice by the Lessor. All such charges or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties.

Lessee shall, upon demand, reimburse Lessor the cost of any fine, penalty, or charge, and any costs and reasonable attorney fees paid or incurred by Lessor as a result of or evolving out of an environmental citation or fire or housing code violation citation or a decision of the local environmental control board or other state, county, or local agency, a panel of a board, agency or one of its hearing officers, when the violation is a result of any act or omission of the Lessee, occupant of the leased premises, or the Lessee's agents, family members, guests or invitees, whether or not known to Lessee, and the act or omission which resulted in the issuance of said citation or violation was not the Lessor's responsibility under this Lease Agreement and was not committed by the Lessor.

**Access by Lessor for Inspection, Maintenance and Servicing**

20. Lessor shall retain duplicate keys to all the doors of the leased premises and shall have access to the leased premises upon due notice to Lessee, without reasonable objection, in order to inspect the same or to make necessary repairs, decorations, alterations or improvements, either in the leased premises or in said building of which the leased premises is a part. Any such work whether requested by Lessee or directed by an occupant of the leased premises or an agent of Lessee shall be accepted by Lessee as a necessity to the tenancy. Such a request for work shall be considered authorization for Lessor to enter into the leased premises to perform the work and shall constitute notice to Lessee of Lessor's entry into the leased premises for the purpose of performing the work.

The Lessor shall have the right, during the last thirty days of the term hereby created to show the leased premises to prospective Lessees; and during the last ten (10) days of said term shall have access to the leased premises in order to make repairs or redecorate same for the incoming Lessee should it deem this action necessary. The Lessor shall exercise these rights of access only after due notice to the Lessee and without reasonable objection by the Lessee, and shall supply such services, except in an emergency only during normal business hours. Normal business hours shall exclude weekends and federal and state holidays unless otherwise agreed to between the parties but nothing herein shall prohibit the Lessor from entering upon the leased premises in an emergency or after due notice has been given to allow local authorities to inspect the leased premises, or when the Lessor has good cause to believe the Lessee may have damaged the leased premises or may be in violation of law.

**Restrictions on Subletting, etc.**

21. Lessee covenants that the leased premises shall be used for residential purposes only, and shall be occupied only by the Lessee and persons as set forth in this Lease Agreement and shall be occupied by no other persons whatsoever. The number of occupants shall not exceed the number set forth herein. Lessee shall not sublet, assign, license or transfer this Lease Agreement, or rent the leased premises or any part hereof, or suffer or permit the leased premises or any part thereof to be used by any additional occupant. In the event of statutory provisions to the contrary, such actions may not be done without the prior written consent of the Lessor, which consent shall not be unreasonably withheld, but in no event may Lessee collect any sums of money from those to whom the leased premises are transferred that are over and above the leasehold charges set forth herein. The Lessee shall not take any roomers or boarders into the leased premises and shall not permit any guest to live at the Premises in excess of fifteen (15) days on the aggregate during any calendar year unless prior written consent is obtained from Lessor.

**Animals**

22. LESSEE HEREBY COVENANTS AND AGREES THAT NEITHER LESSEE NOR ANY OCCUPANT OF THE LEASED PREMISES NOR ANY OF LESSEE'S AGENTS, FAMILY MEMBERS, GUESTS OR INVITEES WILL PERMIT, KEEP, HARBOR, OR BRING UPON THE LEASED PREMISES OR THE COMMUNITY GROUNDS ANY NON-HOMO SAPIEN ANIMAL OR PETS OF ANY KIND WHATSOEVER WITHOUT PRIOR WRITTEN CONSENT OF LESSOR. Lessee further agrees not to allow or permit occupants of the leased premises, nor any of Lessee's agents, family members, guests, or invitees to bring any such animals of any kind into or upon the leased premises or the community grounds. In the event an animal is permitted and said animal causes property damage, personal injury or death to an individual upon the leased premises or community grounds, Lessee shall be solely responsible therefore and shall fully indemnify Lessor for all costs, judgments, damages, awards, and attorney's fees incurred as a result thereof. All such costs or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties. In the event an animal defecates or urinates upon community grounds, Lessee shall immediately clean up after the animal. In the event Lessor grants permission for Lessee to keep an animal upon the leased premises nothing herein shall prohibit Lessor from charging an animal deposit and/or rent, in addition to the rent set forth herein. Such animal deposit and/or rent shall be considered additional rent under this Lease Agreement. Notwithstanding the foregoing, Lessee may request that Lessor provide a reasonable accommodation for a service animal based upon a disability-related need in accordance with applicable laws, this Lease Agreement, and any applicable addenda.

**Uninhabitability of Premises** 23. If the leased premises is damaged by fire, rain, wind, or other cause beyond control of Lessor, unless the same shall occur for any reason for which Lessee is responsible, the leased premises shall be repaired within a reasonable time at the expense of Lessor; and in case the damage rendered is so extensive as to render the leased premises uninhabitable in Lessor's sole opinion, the rent shall cease until the leased premises is repaired. If the leased premise is totally destroyed without fault of Lessee, rent shall be paid up to the time of destruction and this Lease Agreement shall come to an end. Any claim for abatement of rent, set off from rent due or constructive eviction based on housing code violations or uninhabitability of the leased premises may only be made during the tenure of occupancy by a named Lessee. Lessee must first pursue said claim with the appropriate county or city administrative agency which shall make a determination as to whether or not abatement, set-off or constructive eviction are warranted and that said condition persists after Lessor has had a reasonable opportunity to cure said defect after providing notice in writing and in accordance with applicable law.

**Dishonored Payments; Method of Tender** 24. Payment tendered by way of check, draft, money order, credit card, or electronic transfer which is unpaid costs the Lessor additional expenses and, therefore, Lessee shall pay to Lessor a charge of THIRTY-FIVE DOLLARS ($35.00) plus costs as a result of each tender returned unpaid. All such charges or sums shall be considered additional rent under this Lease Agreement and shall immediately accrue to the account between the parties. Lessor shall have the right to require rent payments be made by money order, cashier's check or certified funds. This paragraph in no way affects Lessee's obligation to pay late fees in the event payment in good funds is not received in a timely manner.

**Employee Transfer Clause; Death of Major Wage-Earner** 25. In the event that the Lessee experiences an involuntary employment transfer beyond a fifty (50) mile radius from the leased premises or suffers the death of a leaseholder who is the major wage earner, Lessee may terminate this Lease Agreement by providing Lessor with the following: 1) thirty (30) days prior written notice of Lessee's intention to quit and vacate the premises along with satisfactory written proof of the involuntary employment transfer or death; 2) payment of all rent and miscellaneous charges in arrears, if any; 3) payment for the final thirty days of occupancy of the leased premises; and 4) payment of the actual or estimated cost of repairing actual damage to the leased premises as well as prorated apartment turnover charges including but not limited to the cost of painting, carpeting, and cleaning based on the number of months the leased premises was occupied. Upon completion of the foregoing, Lessee shall be relieved of any further liability for payments of Monthly Rent for the unexpired portion of the Lease Term.

**Military Transfer Clause** 26. In the event that a Lessee who is on active duty with the United States military 1) receives permanent change of station orders or temporary duty orders for a period in excess of three (3) months; 2) is discharged or relieved from active duty with the armed forces; or 3) has been ordered to occupy on-base housing, Lessee may terminate this Lease Agreement by providing Lessor with the following: 1) thirty (30) days prior written notice of Lessee's intention to quit and vacate the premises along with a copy of said assignment, orders or discharge; 2) payment of all rent and miscellaneous charges in arrears, if any; 3) payment for the final thirty days of occupancy of the leased premises; and 4) payment of the actual or estimated cost of repairing actual damage to the leased premises as well as prorated apartment turnover charges including but not limited to the cost of painting, carpeting, and cleaning based on the number of months the leased premises was occupied. Upon completion of the foregoing, Lessee shall be relieved of any further liability for payments of Monthly Rent for the unexpired portion of the Lease Term.

**Condemnation** 27. In the event the leased premises or any part hereof are taken by condemnation by any governmental agency or authority, this Lease Agreement shall be terminated at the option of Lessor and Lessee waives any right to damages or to participate in the proceeds or award made by reason thereof.

**Cancellation; by Lessee; Abandonment** 28. If Lessee shall give such notice to terminate during the lease term, then Lessee shall 1) pay the cost of cleaning and repairing the leased premises, plus all administrative expenses and the cost of advertising, and 2) pay any and all charges incurred by Lessor for damage to the leased premises, ordinary wear and tear excepted; and 3) Lessee shall be and remain liable to Lessor for rent for the remaining period of the lease term for which the leased premises is vacant and unrented, it being understood and agreed that Lessor will use its best efforts to let the leased premises to other persons for such remaining period. If the Lessee shall abandon or quit and vacate the leased premises, voluntarily or involuntarily, except as provided herein, Lessee shall remain liable for all charges under this Lease Agreement for the balance of the Lease Term. The leased premises may be relet by the Lessor for such rent and upon such terms as the Lessor may deem reasonable and advantageous; in the event of such reletting, the Lessee shall be and remain liable only for the deficiency in rent, any expenses incident to such reletting, any damages which the Lessor may have sustained by virtue of the Lessee's use and occupancy of the leased premises, and all costs for redecorating the leased premises. If the Lessee moves out or abandons the leased premises or is disposed thereof voluntarily or involuntarily, Lessee is to remove all personal property from the leased premises prior to such move-out abandonment or dispossession, then, in that event, any such personal property of any kind whatsoever found upon the leased premises shall be deemed to be abandoned by the Lessee and shall become the property of the Lessor, who in any event shall not be liable to the Lessee for its loss, destruction, or damage thereto, and furthermore, Lessee shall be responsible for the removal of said items.

**Action by Lessor Upon Default** 29. Should Lessee fail to pay any one of the monthly installments of rent when the same shall become due or should Lessee violate any one of the terms or conditions of this Lease Agreement, or any rules and regulations herein, or hereafter adopted, Lessor shall have the right and option to re-enter and take possession of the leased premises forthwith, by legal process from the Court having jurisdiction over the leased premises or to terminate this Lease Agreement by giving Lessee, personally or by leaving or mailing to the leased premises, a 30-day written notice to quit and/or vacate the leased premises and the Lessee's right to possession shall terminate upon the last day of the next succeeding month after which said notice is given. In either case, Lessee shall remain fully liable to Lessor for sums equal to the amount of each full month's rent plus other charges set forth herein to the lease termination date or until the leased premises is rerented, plus damages. Furthermore, in the event Lessor claims that sums remain due and owing under the Lease Agreement after Lessee has vacated the leased premises, Lessee hereby authorizes Lessor to report any and all such delinquencies to any credit reporting agencies at Lessor's option.

**Diplomats** 30. As a condition to Lessor entering into this Lease Agreement, any Lessee who has been granted diplomatic immunity by the United States Government must provide a notarized statement signed by the Ambassador or head of the mission for the government to which Lessee is attached, in which Lessee's government agrees to waive the diplomatic immunity of Lessee and indemnify Lessor for any of the Lessee's obligations arising under this Lease Agreement, including but not limited to, payment of rent, late fees, attorney's fees, court costs and damages.

**Superseding Authority** 31. Statutory provisions, with respect to notice requirements and the assessment of late fees, legal fees, and return payment charges shall prevail over the terms and conditions of this Lease Agreement and any Addenda hereto. In the event statutory provisions are in place or are subsequently enacted that provide for notices to be given at an earlier time or date than those set forth herein, the parties right to give said notice shall be the earliest date allowable by law. In the event statutory provisions are in place or are subsequently enacted that provide for the assessment of late fees, legal fees, or return payment charge at an amount greater than or at a time earlier than that set forth in the Lease Agreement, Lessor shall have the right to impose said charges at the greater rate from the effective date of said statutory change.

**Severability** 32. If any term, covenant, condition, or provision of this Lease Agreement, or the construction thereof to any person or circumstance, shall to any extent be deemed invalid, unenforceable or in conflict with any law or statute, the remainder of this Lease Agreement, or the construction of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant, condition, and provision of this Lease Agreement so affected shall be valid and enforced to the fullest extent permitted by law.

**Notices** 33. All notices authorized or required by the terms of this Lease Agreement shall be in writing, signed and be given by regular mail, postage prepaid, or hand delivered to the leased premises of the Lessee at the apartment address herein above provided, or to the Lessor at the address where rent is paid. Immediately upon vacating the leased premises, it shall be Lessee's obligation to provide Lessor with a forwarding address in writing. If Lessee fails to do so, it will be presumed that Lessee's last known address is the leased premises set forth herein and that Lessee has left forwarding orders with the postal service. The name, address and telephone number of both the Lessor and the Lessor's agent authorized to accept notice or service of process on behalf of Lessor are posted in the business office of the property.

Lessor and Lessee acknowledge that electronic communication including but not limited to email, text, or telephone is for the convenience of the parties but does not constitute notice in writing as is required by this Agreement.

**Management** 34. The fee simple owner of the leased premises has appointed and designated SOUTHERN MANAGEMENT CORPORATION, as its lawful agent to manage, control and enforce the terms of this Lease Agreement, the Addenda attached hereto, and to enforce and defend all terms and conditions of this Lease Agreement on behalf of and in the name of the Owner. This shall include the filing and defense of all legal actions arising out of this Lease Agreement SOUTHERN MANAGEMENT CORPORATION, is assignee of all causes of action arising under this Lease Agreement. Any action by SOUTHERN MANAGEMENT CORPORATION shall be conclusive as to Lessee who shall have no right to inquire into the extent and terms of SOUTHERN MANAGEMENT CORPORATION's agency for Owner.

**Entire Agreement** 35. Lessor and Lessee covenant and agree that this Lease Agreement contains the entire agreement of the parties. No oral representations, oral agreements, collateral or other provisions are incorporated herein, other than Addendum A, Addendum B (Community Policies and Guidelines), and those specified herein, copies of which are attached hereto and receipt of which are hereby acknowledged by Lessee. In the event of a conflict between the provisions of the General Lease Terms and any Addenda hereto, the terms of the Addenda shall supersede those set forth in the General Lease Terms. No oral modifications shall be made to the terms and conditions of this Lease Agreement. Lessee acknowledges that prior to the signing of this Lease Agreement the Lessor delivered to the Lessee a copy of the proposed Lease Agreement and that the Lessee was given an opportunity to examine said proposed Lease Agreement and the leased premises and that said are acceptable and in good order. This Lease Agreement and the attachments hereto have been executed by Lessee under seal and Lessee acknowledges that a copy thereof was delivered to Lessee at the time the Lease Agreement was fully executed.

## Addendum B

### Community Policies and Guidelines

**Locks, Keys and Alarms** 1. No additional security device including but not limited to locks, alarms, and alarm systems shall be placed upon any door or window of the leased premises without the prior written consent of Lessor. If such additional security device is approved by Lessor, Lessee shall furnish a duplicate key or pass code to said security device to Lessor. Upon the termination of this Lease, Lessee shall surrender all keys, access cards, key fobs, etc., to the leased premises and to the mailbox to Lessor. Lessor shall not be deemed to be in possession of the leased premises until Lessee returns all keys, access cards, key fobs, etc., in hand to Lessor. Lessee shall pay to Lessor the reasonable replacement cost of lost keys, access cards, key fobs, etc., or for such items not surrendered as aforesaid and for change of locks, when appropriate, and for Lessor opening the door or providing access in lock-out situations.

**Heat, Hot Water, etc.** 2. Lessor shall not be liable for any temporary failure to furnish any applicable services such as heat, water, hot water, gas, or electricity or air conditioning, (if provided), or for any services whatsoever beyond Lessor's control.

**Trash and Garbage** 3. Lessor shall maintain a designated depository in the area adjacent to the building of which the leased premises constitutes a part, and Lessee shall have the right to deposit trash and garbage in such depository at any time. Lessee shall not place any trash or garbage receptacle in any common area of which the leased premises constitutes a part. If recycling receptacles are provided, Lessee shall endeavor to deposit appropriate items in appropriate recycling receptacles. Lessee shall not deposit hazardous, combustible or toxic materials, materials that constitute a threat to health or safety, or furniture or other large items in trash receptacles or common areas and Lessee shall be responsible for arranging for the removal of the same at Lessee's sole cost and expense. If garbage disposal is provided, Lessee shall use same only for the purpose as intended. The cost of necessary repairs to garbage disposal shall be borne by Lessee, but Lessor reserves the exclusive right to select, or authorize the selection of, repairmen required to repair the same.

**Laundry** 4. Lessee shall not install a washer, dryer or other similar cleaning device in the leased premises. Lessor may provide laundry facilities containing coin or card operated laundry and dryer machines for the use of Lessee. Laundry facilities shall be used only in the manner and under the conditions prescribed by regulations to be designated by Lessor. All personal property placed in a laundry facility or any place appurtenant thereto, shall be at the sole risk of Lessee or the parties owning the same.

**Carpeting** 5. In the event the apartment is not fully carpeted within sixty (60) days of occupancy, the Lessee, at its sole cost and expense, will provide carpeting and padding covering 80% of each area of the leased premises (excluding only the kitchen and the bathroom(s)) so as to cushion sounds which would disturb occupants on the floor below. If carpeting is provided, Lessee shall vacuum all carpet in the apartment on a regular basis. Mere sweeping of the carpet is not sufficient. Ground-in dirt, holes, bleach, burns, stains, odors, or other damage resulting from Lessee's failure to care for the carpet shall be considered damage beyond ordinary wear and tear and Lessee shall be responsible for damage, which may include replacement of the carpet throughout the entire apartment.

**Telephone; Communications** 6. Lessee shall be responsible to arrange for telephone service and to pay all bills for services to the leased premises during the entire term created by this Lease, as the same become due and payable, if such service is rendered. The failure to provide access to such services shall not be a ground for cancellation of this Lease, or for nonpayment of rent. Lessee shall not install any additional phone or communication outlets or wiring anywhere in the apartment without prior written consent of Lessor, which shall be conditioned upon Lessee's use of an approved professional technician. Lessee shall pay all installation charges for additional outlets and wiring and shall be responsible for all damage to the apartment or community caused by installation, use and operation of outlets, wiring and equipment.

**Appliances, HVAC, etc.** 7. No additional appliances shall be allowed in the leased premises without the prior written permission of Lessor. If such permission is obtained, Lessee shall pay the Lessor an additional charge per month as designated by Lessor, payable in advance on the first day of the month. This charge will be added to rent due, and non-payment shall be a default in rent. Under no circumstances shall any air conditioning unit or apparatus be installed by Lessee upon either the interior or exterior of said building. Lessee further agrees not to install or use any additional air conditioning equipment or heating units, in the leased premises which are not furnished by Lessor for use in said premises.

**Plumbing Fixtures** 8. Bathtubs, showers, sinks, water closets, toilets, urinals and other water and sewer apparatus and fixtures shall not be used for purposes other than those for which they were designed, and no improper articles shall be thrown therein. The cost of repairing any damage resulting from misuse of any of the same shall be borne by Lessee. Lessor reserves the exclusive right to select, or authorize the selection of, repairmen required to repair any such damage. Lessee further agrees not to install any plumbing fixtures or systems without the prior written consent of Lessor.

**Awnings, Antennas, etc.** 9. No satellite receivers, awnings, antennas, television cables, video apparatus, or other equipment or projections, shall be attached to the outside or other parts of the building or leased premises except such as are installed by Lessor or authorized third parties subject to applicable law and Lessor's requirements. Lessee shall not improperly or unlawfully obtain or tap into any cable, satellite, or other television system upon the property.

**Use of Windows, Dusting, Defacing Property, etc.** 10. Lessee shall not permit anything to be kept on the window sills of the leased premises, nor permit any signs, banners, or other physical apparatus to be hung inside or from the outside of windows or balconies, nor permit anything to be thrown out of the windows or off of the balconies of the leased premises, , nor permit the dusting or shaking of mops, brooms, or other cleaning material out of the windows, doors or balconies of the leased premises. Lessee shall not deface or damage the floors, walls, woodwork, or windows of the leased premises or common areas. Lessee shall not place any sign, advertisement or notice of any kind in or upon the leased premises or common area without the prior written consent of Lessor. Solicitation of any kind or posting of notices of any kind in windows of the leased premises or upon the common areas of the property is strictly prohibited.

**Cleanliness, Refrigeration, Appliances, etc.** 11. Lessor will furnish and maintain in operation in the leased premises such refrigerator, stove, garbage disposal and other appliances as Lessor shall deem suitable and appropriate, but shall not be liable for any damages which may be caused, directly or indirectly, in furnishing or maintaining the same, or by failure to maintain the same in operation, except that Lessor shall be liable for and will reimburse Lessee for any damage to the property of the Lessee caused by the negligence of Lessor or Lessor's violation of any law. Lessee agrees that if Lessee or any occupant, family member, guest or invitee whether known or unknown to the Lessee shall cause damages to the refrigerator, stove, garbage disposal or appliances of Lessor, Lessee agrees to pay cost of repairing the damage. Lessee further agrees to keep the premises and all appliances, fixtures, and finishes clean, sanitary and safe and dispose of all rubbish, garbage and other waste in a clean and sanitary manner, and to keep the stove burners and oven in clean, sanitary and odor free condition, free of grease, food, rust, and soil.

**Light Bulbs** 12. Lessor shall furnish light bulbs in fixtures at the time Lessee takes possession only. Thereafter, Lessee, at its sole cost and expense, shall be responsible for replacement of the same.

**Oversized Objects** 13. Lessee will not move into said premises any iron safe or safes and/or pianos or electric organs, waterbeds, any furniture containing water, aquariums over fifteen (15) gallons, or other oversized objects not typically associated with a household.

**Storage** 14. Lessee, at Lessee's sole risk, and without any liability or responsibility on the part of the Lessor, may use reasonable space, if available, in the storerooms provided by Lessor as an accommodation to the Lessee for storage of non-perishable household items provided, however, that Lessor may discontinue same on demand, whereby Lessee agrees to immediately remove all property stored thereon. If Lessee fails to remove the same within five (5) days notice thereof, Lessor may remove and dispose of the same. If any employee of Lessor shall at the request of the Lessee or occupants of the leased premises, move, handle or store any such articles, such employee shall be deemed the agent of Lessee and Lessor shall not be liable for any loss, damage, or expense that may be sustained in connection therewith. Any personal property which may be left in any automobile while it is in a parking area or garage provided by Lessor, shall be at the sole risk of Lessee or the parties owning the same and Lessor shall in no event be liable for the loss, destruction, theft of or damages to such property. Lessee may not store personal property in utility closets or any other enclosed space containing heating, ventilation, or air conditioning (HVAC) equipment. Excessive storage of personal property, as determined solely by Lessor, within the leased premises is strictly prohibited.

**Packages, Parcels, etc.** 15. In the event that Lessor shall provide a facility for receiving and delivering packages, parcels and the like for on behalf of Lessee, Lessee may utilize the same together with any services that may be supplied by the operation thereof at Lessee's sole risk. No charge is made by Lessor for such accommodations, and Lessor assumes no liability for any package, parcel, etc. left therein or in connection with the delivery of any of the same. Employees of Lessor have no authority to enter into any private arrangement to accept packages on behalf of Lessee. Any such acceptance by the employee of Lessor or any such private arrangement shall be at Lessee's sole risk.

**Balconies, Patios** 16. The use of balconies and patios shall be limited to outdoor furnishings and reasonably sized living plants and must be kept clear of trash, grills, clutter, and laundry at all times and shall not be used as storage areas. Items including but not limited to bicycles, tires, toys, motorized vehicles, oversized objects and articles of clothing shall not be stored or displayed in these areas. Balconies and patios must be kept in a neat, clean and orderly condition. No items shall be thrown from or off any balcony or patio whatsoever. All persons shall be clothed and properly attired when appearing on balconies and patios.

**Fire Hazards** 17. Lessee shall not commit or permit any extra hazardous act that will increase the rate of fire insurance on the leased premises and/or the building of which the leased premises constitutes a part. In the event the leased premises shall be damaged by fire or other casualty, Lessor, unless it shall otherwise elect as hereinafter provided, shall repair the same with reasonable dispatch after being notified by Lessee of such damage. If Lessor in its sole opinion determines that the damage is such that the leased premises is rendered uninhabitable, but is, nevertheless, repaired by Lessor, the rent shall be equitably abated for the period during which the leased premises shall have been uninhabitable; provided, however, that if such damage is caused by the negligence or improper conduct of Lessee or

---

Lessee's occupants, family members, guests, or invitees whether known or unknown to the Lessee, there shall be no such abatement, unless Lessor elects to terminate this Lease, as herein below provided. If Lessor in its sole discretion shall decide, within a reasonable time after the occurrence of any such fire or other casualty (even though the leased premises may not have been affected by such fire or other casualty), to demolish rebuild or reconstruct the building of which the leased premises constitutes a part, then, upon written notice given by Lessor to Lessee, this Lease shall terminate on a date, at least sixty (60) days hence, to be specified in such notice as if said date had been originally set forth as the expiration of date of the term hereof, and the rent shall be adjusted as of the time of the occurrence of such fire or other casualty.

The use or storage of electric, open flame, or gas grills is strictly prohibited. The possession, use, or storage of any type of fireworks is strictly prohibited from the premises and community. No flammable materials are to be stored in closets, furnaces or storage rooms.

**Proper Attire** 18. All persons shall wear shoes and be fully clothed and properly attired when appearing in the lobby, corridors, swimming pool, and other public spaces in or around said building and the apartment community. In the event that Lessee, occupants of the leased premises, or Lessee's agents, family members, guests, or invitees whether known or unknown to the Lessee avail themselves of the privilege of using the sun deck, swimming pool, or fitness center in the event same is provided by Lessor, then they shall be suitably attired.

**Parking** 19. Garage and parking accommodations are not included in the rental unless expressly agreed to by the parties in writing. Parking accommodations are for motorized vehicles only. Lessee's use of the parking facilities or any parking space in the apartment community, whether within or outside of a garage, for the parking of vehicles shall be at the sole risk of Lessee without liability of Lessor for any reason whatsoever. Personal property left within any vehicle shall be at Lessee's sole risk. Any employee of Lessor who shall move or handle Lessee's automobile or any articles or packages therein, at the request of Lessee or members of Lessee's family, shall be deemed to be the agent of Lessee, and not the agent of Lessor for such purpose. No mechanical or body repair work shall be performed to or upon any vehicle upon the property of the apartment community; if improperly stored, said vehicle may be removed and/or stored elsewhere at Lessee's sole cost, expense and risk. Abandoned, non-operational, or improperly parked vehicles or vehicles in disrepair may be removed at Lessee's sole cost, expense and risk. Parking of motor vehicles on any areas not marked with parallel parking lines or not otherwise designated as a parking area is strictly prohibited. No parking or storage of truck, campers, boats, trailers, recreational vehicles, commercial vehicles, unlicensed motor vehicles, or vehicles not bearing current registration license plates, or in compliance with all applicable state, county and local jurisdiction requirements are allowed on parking lots without prior written consent of Lessor. All such vehicles aforesaid, other than passenger vehicles bearing current registration plates, will be towed away from the parking areas at the vehicle owner's sole expense. Lessor shall have the right to institute rules and regulations concerning parking, which Lessor may change from time to time. Charging of electric vehicles is prohibited except in designated charging stations if and where provided.

**Loitering, etc.** 20. Lessee, occupants of the leased premises, and Lessee's agents, family members, guests, and invitees whether known or unknown to Lessee shall not loiter, in the lobby, recreation rooms, laundry facility, playground, swimming pool, corridors, landings, entranceways to any buildings, on the stairs of said building, in the doorways to the leased premises, in any common areas, or upon community grounds.

**Common Areas; Restrictions on Use** 21. The streets, driveways, parking areas, entrance ways, entrance steps to the buildings, hallways, playgrounds, open spaces, and other commonly used areas or facilities (hereinafter referred to collectively as the "common areas") are provided for the common use of Lessor and Lessees, and all other tenants of Lessor. Lessee, its occupants, family members, guests, and invitees whether known or unknown to the Lessee, agrees to use said areas in a neat, clean and orderly manner and shall not deposit, park, or suffer or permit the placing, depositing, or parking of any personal property including but not limited to trailer, boat, truck, baby carriage, stroller, bicycle, tricycle, motorized vehicle, roller skates, moving toy, swing, slide, doormat, or the like, in or upon the common areas. Smoking and excessive noise in common areas is strictly prohibited. Lessee shall not smoke or create or cause to be created any excessive noise in any common area, nor shall Lessee permit any occupant, family member, guest, or invitee whether known or unknown to the Lessee to engage in such behavior. Maintenance or servicing of any car or motor vehicle upon the property of the apartment community is strictly prohibited. The use of the common areas by Lessee shall be at Lessee's own risk.

**Right to Use Swimming Pool, Tennis Courts, Other Facilities** 22. Common use facilities, including but not limited to swimming pool, tennis courts, and fitness centers, may be provided by Lessor at its sole discretion. Lessee's privilege to use common use facilities are subject to the Lessee being current in the payment of rent and all other sums due under the lease and being in compliance with the rules and regulations as Lessor may from time to time elect to declare to be in effect A copy of said rules and regulations are available for inspection.

**Entrance Doors** 23. All doors leading from and into the leased premises into the hallways of the building or common area shall be closed at all times. Loitering is not permitted in said areas. Lessor reserves the right to close such doors in the event of the violation of this provision.

| | | |
|---|---|---|
| **Unlawful Use, Disturbing Noises, etc.** | 24. | Lessee shall not use, or permit to be used the leased premises or apartment community for any unlawful act. Lessee shall not make or permit to be made any disturbing noises or do or permit any act which will unreasonably interfere with the rights, comforts or convenience of other Lessees or employees of Lessor. Lessee shall keep the volume of any radio, TV, stereo, music system, video game, communication device, entertaining apparatus, or other instrumentalities sufficiently reduced at all times so as not to disturb other occupants in the building; and shall not conduct or permit to be conducted vocal or instrumental practice or instruction. In order to eliminate any noise caused or occasioned by walking on the hardwood floors in the leased premises, Lessee shall install sufficient carpeting or rugs as set forth in Paragraph 5 above. |
| **Redecorating, Wall Hangings** | 25. | Lessor prohibits any painting, redecoration, or alteration of any kind by Lessee without prior written approval and consent of Lessor. Lessee shall be responsible for any damage created by putting tacks or the driving of nails or other implements into the walls, doors, windows, or metal framework of the leased premises for the purpose of hanging pictures, mirrors, or any other purpose. |
| **Draperies, Blinds** | 26. | Lessee must install, at Lessee's own expense, draperies or curtains, or vertical blinds, all with white backing within thirty (30) days of occupancy unless venetian blinds, draperies or curtains are supplied by Lessor. If provided by Lessor, any damage to venetian blinds, draperies or curtains beyond normal wear and tear shall be charged to Lessee. |
| **Additional Policies** | 27. | Lessor reserves the right to issue additional policies, guidelines, rules and regulations as it deems appropriate in its sole discretion. |
| **Lead Warnings, Statements** | 28. | Housing constructed before 1978 may contain lead-based paint. Lead from paint, paint chips and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre- 1978 housing, Lessor must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. If lead-based paint hazards do exist on the applicable premises, Lessor has made available to Lessee access to records and reports acknowledging the absence of such hazards from the residential dwellings, and if the dwelling is in Maryland Lessor has provided Lessee with the EPA "Protect Your Family From Lead In Your Home" brochure and the Notice of Tenants' Rights, Lead Poisoning Prevention, as published by the Maryland Department of the Environment. Furthermore, if lead-based paint hazards do exist on the applicable premises, Lessor is in full compliance with applicable Federal and State Law and results of such testing has been made available to Lessee. Lessee understands and acknowledges that compliance under the Federal and State laws, if applicable, is the sole responsibility of the Lessor and that Lessee has read and has become familiar with the requirements of Federal and State law as contained in the above brochures and notice. |
| **Smoke Detectors, Carbon Monoxide Detectors** | 29. | This residential dwelling unit contains alternating current (AC) electric service. In the event of a power outage, an alternating current (AC) powered smoke detector or carbon monoxide detector will not provide an alarm. Therefore, the occupant should obtain dual powered smoke and carbon monoxide detectors or battery powered smoke and carbon monoxide detectors. If a dual powered smoke or carbon monoxide detector or a battery powered smoke or carbon monoxide detector is provided by Lessor, Lessee shall be solely responsible for checking and replacing the battery or batteries as necessary to ensure that the detector is in proper working order. |